UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **JOSHUA LATRAVIS PLATER** | **CASE NO. 5:21-CV-00197 SEC P** |
| **VERSUS** | **JUDGE ELIZABETH E. FOOTE** |
| **CADDO PARISH SHERIFF'S OFFICE DETENTION BUREAU ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Pending before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment [doc. #65], filed by Defendants Anthony Gaines, Gavin Mitchell, Joseph Bourne, and Todd Remedes. The motion is unopposed. For reasons assigned below, it is recommended that the motion for summary judgment be GRANTED. It is also recommended, sua sponte, that Plaintiff Joshua Latravis Plater's claims against Defendant "unknown nurse" be DISMISSED WITHOUT PREJUDICE.

## Background

Plater, proceeding pro se and in forma pauperis, filed this proceeding on approximately January 22, 2021, under Title 42, United States Code, Section 1983, against the following defendants: Caddo Parish Sheriff's Office Detention Bureau, Caddo Correctional Center ("CCC"); Commander Rick Farris; Sergeant Anthony Gaines; Deputy Fertal; Sergeant Tamika Brewer; unidentified nurse;[1] the Medical Unit; the Emergency Response Team ("ERT"); Gavin Mitchell; Todd Remedes; Joseph Bourne; Officer John Childress; Sheriff Steve Prator; and Sergeant Tommy

---

[1] Plaintiff appears to use "unknown nurse" and "unidentified nurse" interchangeably with "medical staff." [doc. #26, p. 1]. However, he does not use "unknown" or "unidentified" nurse interchangeably with "medical unit."

Englade.

Plater alleges that on January 7, 2021, around 4:30 p.m., Defendants Mitchell, Remedes, and Bourne escorted him to the medical unit. [doc. #1, p. 2; #5, p. 7]. Before he could be medically evaluated, Sergeant Anthony Gaines ordered Mitchell, Remedes, and Bourne to transport Plater back to his unit. [doc. #5, p. 7]. Plater claims that while he was in full restraints, Mitchell; Remedes; and Bourne utilized excessive force, pushing him against a door in the medical unit, slamming him to the ground, punching him with closed fists, hitting him with objects, and shocking him with a Taser for no reason. [doc. #1, p. 2; #5, p. 7]. The "assault escalated and continued to infirmary room number three," where they hit him with flurries of closed-fist punches to the face. [doc. #1, pp. 2–3]. He bled profusely and suffered injuries to his mouth, nose, ribs, abdomen, and lower back. [doc. #1, p. 3; #5, p. 7]. In addition to Mitchell, Remedes, and Bourne, Plater faults Sheriff Prator. [doc. #26, p. 4].

Plater claims that Mitchell told him, "We gone woop [sic] your ass like we did last time bitch," which Plater "interpreted" as retaliation for "pending civil action no.: 5:18-ca-0171." *Id.* at 2.

Plater claims that Sergeant Gaines failed to protect him from the others' excessive force. [doc. # 26, p. 3].

Plater seeks "medical expertise," job demotions for "the emergency escorts," and $850,000.00 to $10,000,000.00 in monetary compensation. [doc. #s 1, p. 3; 5, p. 4].

On August 3, 2022, the Court adopted the undersigned's Report and Recommendation and dismissed the following: (1) Plater's claim that Sergeant Gaines failed to render medical care; (2) Plater's claim that his Tylenol "ended" on January 18, 2021; (3) Plater's retaliation claim; (4) Plater's claim that members of the ERT did not wear body cameras; and (5) all of his claims against

CCC, Caddo Parish Sheriff's Office Detention Bureau, the ERT, the Medical Unit, Commander Rick Farris, Sergeant Tommy Englade, Sheriff Steve Prator, Sergeant Tamika Brewer, Deputy Fertal, and Officer John Childress. [doc. #57].

The Court retained the following: (1) Plater's claims that the unidentified nurse was negligent and deliberately indifferent when Plater sought medical care; (2) Plater's excessive force claims; and (3) Plater's bystander-liability claim against Sergeant Gaines. *Id.*

On November 14, 2022, Defendants Joseph Bourne; Anthony Gaines; Gavin Mitchell; and Todd Remedes (collectively, "Defendants"), filed the instant motion for summary judgment on the issues of excessive use of force and bystander-liability. [doc. #65].

Plater did not file a response. Accordingly, this matter is ripe.

## Analysis

### I.  *Summary Judgment Standard*

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim. *Stahl v. Novartis Pharm. Corp.*,

3

283 F.3d 254, 263 (5th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).[2]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

II.   *Qualified Immunity*

Title 42, United States Code, Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides

---

[2] However, Rule 56 does not require the Court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

4

a remedy for the rights designated therein. *Id.* "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* To assert a claim for damages under this statute, a plaintiff must demonstrate "(1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor." *Muslow v. City of Shreveport*, 491 F. Supp. 3d 172, 182 (W.D. La. Sept. 30, 2020) (quoting *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (internal quotation marks omitted)).

Defendants assert qualified immunity. When, as here, a plaintiff seeks money damages from government officials in their individual capacities under Section 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.*

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

Qualified immunity is nominally characterized as an affirmative defense. However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th

Cir. 2008). Plaintiff's burden is two-pronged. First, a plaintiff must demonstrate that "the facts alleged or shown, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right . . . ." *Comeaux v. Sutton*, 496 F. App'x 368, 370 (5th Cir. 2012) (citing *Pearson*, 555 U.S. at 236). Second, plaintiff must show that "the right violated was clearly established at the time of the defendant's alleged conduct." *Id.* The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

At the summary judgment stage, a plaintiff satisfies the first prong by establishing that "genuine issues of material fact exist regarding the reasonableness of the officials conduct." *Muslow*, 491 F. Supp. 3d at 183 (quoting *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016) (internal quotation marks omitted)). "This proof need not be 'absolute,' but must consist of more than 'mere allegations.'" *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). "The second prong requires that "the constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right." *Id.* (quoting *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998) (internal quotation marks omitted)). "A public official may assert the defense of qualified immunity even though a plaintiff's civil rights have been violated, provided that the official's conduct was objectively reasonable." *Id.* "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

"To be clearly established, a legal principal must be found in the holdings of either 'controlling authority' or a 'robust consensus of cases of persuasive authority,' and defined with a

high degree of specificity." *Muslow*, 491 F. Supp. 3d at 183 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)). However, the cases relied upon need not be identical—there may be "notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted)). The clearly established test "ensures that officials have fair warning that particular conduct violates the Constitution." *Id.* (quoting *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (internal quotation marks omitted)).

A. *Excessive Force*

Plater asserts excessive force claims against Defendants Bourne, Mitchell, and Remedes. "In addressing an excessive force claim brought under [Section] 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments . . . ." *Id.* Thus, the validity of an excessive force claim must be judged by the "specific constitutional standard which governs that right, rather than some generalized 'excessive force' standard." *Id.*

When, as here, the excessive force claim arises in the context of a convicted prisoner[3] challenging an application of force, it is properly characterized as one invoking the protections of

---

[3] Neither Plater's filings nor Defendants' motion establishes whether Plater was a pretrial detainee or convicted prisoner at the time of the incident. "This is relevant because the claims of a convicted inmate are governed by the Eighth Amendment and the claims of a pretrial detainee are governed by the Due Process Clause." *Vallo v. Prator*, No. 18-cv-1341, 2019 WL 11076122, at *1 (W.D. La. Nov. 22, 2019), *R&R adopted in part and rejected in part*, 2020 WL 5816916, (W.D. La. Sept. 29, 2020). However, given Plater's transfers to other detention facilities and his invocation of the

7

the Eighth Amendment, which prohibits "cruel and unusual punishments inflicted." *See Graham*, 490 U.S. at 398; *Whitley v. Albers*, 475 U.S. 312, 318 (1986). Therefore, the Court must consider whether, viewing all facts in the light most favorable to Plater, the actions of Bourne, Mitchell, and Remedes violated Plater's Eighth Amendment right to be free from excessive force. *See Martin v. Seal*, 510 F. App'x 309, 311–12 (5th Cir. 2013) (analyzing inmate's claims for excessive force under the Eighth Amendment standard). If Plater establishes such a violation, then the Court will analyze whether the right was clearly established at the time of the alleged misconduct. *See id.*

The "core judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Martin*, 510 F. App'x at 312 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (internal quotation marks omitted)). The Court considers five non-exclusive factors to make this determination: "(1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between this need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Id.* (quoting *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (internal quotation marks omitted)).

Importantly, Plater did not file a response to Defendants' motion for summary judgement or offer any evidence to create a genuine issue of fact as to Defendants' invocation of qualified immunity. The Fifth Circuit has held that "the traditional leniency afforded to a pro se plaintiff does not excuse [him] from [his] burden of opposing summary judgment through the use of

---

Eighth Amendment in his pleadings, it appears Plater was a convicted prisoner at the time of the incident. *See id.* Accordingly, his claims will be assessed under the Eighth Amendment.

competent summary judgment evidence." *Malcolm v. Vicksburg Warren School Bd. Of Trustees*, 709 F. App'x 243, 246 (5th Cir. 2017) (citing *Davis v. Fernandez*, 798 F.3d 290, 292–93 (5th Cir. 2015)). And, while a plaintiff's verified complaint can be considered as summary judgment evidence to the extent that it comports with the requirements of Federal Rule of Civil Procedure (56)(e), *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), here, Plater's amended complaint was not verified as true and correct under penalty of perjury, and, therefore, is unverified and does not constitute competent summary judgment evidence. *See id.* (finding that plaintiff's second amended complaint was not verified and, therefore, was not competent summary judgment evidence).[4]

Accordingly, because Plater has not responded to Defendants' motion, and his complaint is not competent summary judgment evidence, the Court looks only to the uncontested summary judgment evidence provided by Defendants in support of their motion. *Stephenson v. Gray County Sheriff Dep't*, No. 2:19-CV-222, 2021 WL 5362089, at *3 (N.D. Tex. Sept. 28, 2021).

Turning to that evidence, Defendants do not contest that they used force on Plater—they admit striking him and tasing him. [doc. #65-1, p. 1]. Rather, Defendants contend that their use of force was lawful. *Id.*

---

[4] The Fifth Circuit has held that a party may support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial. *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019). "Such a consideration is particularly relevant where a *pro se* plaintiff's allegations form his entire response in opposition to summary judgment." *Lozana v. Davis*, 774 F. App'x 263, 264 (5th Cir. 2019). However, the Fifth Circuit has also held that "a court may not rely on mere factual allegations in an unverified complaint to make summary-judgment rulings." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 334 (5th Cir. 2020). Given that Plater failed to offer *any* opposition to summary judgment—unsworn or otherwise—the Court will not rely on the factual allegations in his unverified complaint. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) (internal quotation marks omitted))).

According to Defendants' statement of undisputed material fact, Deputy Robert Fertal called for assistance to address a situation with Plater involving a dispute over a food tray. [doc. #65-2, p. 1]. An Emergency Response Team ("ERT") consisting of Deputies Bourne, Mitchell, and Remedy responded, as did Shift Sergeant Gaines. *Id.* After the ERT arrived, Plater complained of chest pains and an injury to his hand, at which time Sergeant Gaines ordered the ERT to escort Plater to the medical unit. *Id.* The ERT placed Plater in restraints and escorted him to the medical unit, where he was evaluated and treated by a nurse.[5] *Id.* The nurse cleared Plater, and the ERT proceeded to escort him back to his unit. *Id.* at 2.

When the ERT attempted to escort Plater out of the medical unit, he began physically resisting by dropping his body weight. *Id.* The ERT then secured Plater against the back door of the medical unit and verbally ordered him to stop resisting, which he refused. *Id.* Then, Plater pushed himself off the backdoor of the medical unit and attempted to strike Deputy Mitchell. *Id.* Deputy Bourne then grabbed Plater by his right shoulder and took him to the ground to gain compliance. *Id.* When Plater was on the ground, Deputy Bourne released him, and he was secured by Deputy Mitchell. *Id.* Plater then attempted to stand up, and Deputy Bourne applied a distractionary strike to Plater's upper back to gain compliance. *Id.* Plater did not comply, and Deputy Remedes tased him. *Id.*

Plater stopped resisting when he was tased. The ERT then assisted Plater to his feet and escorted him to an exam room. At that time, Plater began resisting again by thrashing his body around and dropping his body weight. *Id.* Once inside the exam room, Plater continued to refuse commands to stop resisting and get onto the bed. *Id.* at 3. The ERT then attempted to secure Plater

---

[5] Video footage confirms Plater was escorted from his cell but does not show any subsequent use of force. [Exhs. B-2, B-3, B-4, B-5, B-6].

10

onto the bed. *Id.* During that attempt, Plater attempted to strike Deputy Mitchell in the face, at which time Deputy Bourne struck Plater in his left upper back and Deputy Mitchell struck Plater twice in his face. *Id.* Plater then stopped resisting. *Id.* After Plater was evaluated and treated by medical staff in the exam room, the ERT escorted Plater back to his unit without incident. *Id.*

As previously discussed, Defendants have raised the defense of qualified immunity in their motion for summary judgment, arguing that they did not violate Plater's constitutional rights and that their conduct was objectively reasonable under the circumstances. [doc. #65-1, pp. 5–6]. Having properly invoked qualified immunity, Defendants have met their initial burden and placed the onus on Plater to produce or identify evidence showing a disputed issue of material fact under the two-pronged qualified immunity defense. *Stephenson*, 2021 WL 5362089, at *7. And, as Plater has failed to produce or identify any such evidence, the undersigned finds that Plater has not met his burden to show any disputed issue of material fact as to whether Defendants' use of force violated his constitutional rights.

Indeed, the unchallenged summary judgment evidence shows that Defendants' use of force was lawful, and, therefore, did not violate Plater's constitutional rights.[6] In determining whether the use of force was lawful, the Court must evaluate each officer's conduct separately, to the extent possible. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (citing *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007)).

---

[6] The Fifth Circuit has repeatedly affirmed summary judgment in excessive force cases where the only competent evidence came from Defendants. *See e.g. Jones v. Anderson*, 721 F. App'x 333, 335 (5th Cir. 2018) (affirming summary judgment where prisoner did not submit competent summary judgment evidence); *Turner v. Baird*, 707 F. App'x 290, 291 (5th Cir. 2017) (same).

1. *Deputy Bourne*

Deputy Bourne testified in his affidavit that when the ERT attempted to escort Plater out of medical, he began to physically resist by "dropping his body weight and refusing to be escorted." [doc. #65-3, p. 2]. Deputy Bourne and the ERT "secured Plater against the back door of medical and gave him verbal orders to stop resisting," which he refused. *Id.* When Plater pushed himself off the back door of medical and attempted to strike Deputy Mitchell, Deputy Bourne "grabbed Plater by his right shoulder and took him to the ground in an attempt to gain compliance." *Id.* When Plater attempted to stand back up, Deputy Bourne "applied a distractionary strike to his upper back in an attempt to gain compliance." *Id.* Shortly thereafter, when the ERT attempted to secure Plater onto a bed in a medical exam room, he attempted to strike Deputy Mitchell in the face. [doc. #65-3, p. 3]. Deputy Bourne then "struck Plater in his upper left back in order to gain compliance." *Id.*

Applying the *Hudson* factors, the undersigned finds that Deputy Bourne's use of force was lawful. While Deputy Bourne used significant force, he did so in response to Plater's attempts to strike the officers, or his refusal to comply with the officers' verbal commands to cease resisting. The force that Deputy Bourne employed—grabbing Plater's shoulder, taking him to the ground, and applying distractionary strikes to the upper back—was reasonable, given Plater's attempts to strike the officers and his refusal to comply with their verbal commands. Deputy Bourne attempted to temper his use of force by removing his arm from Plater's right shoulder to avoid striking him in the face. [doc. #65-6, p. 1]. Further, Plater has not produced competent summary judgment evidence that he suffered any significant injury from the officers' use of force.[7]

---

[7] Deputy Remedes' incident report indicates that Plater "was treated for any possible injuries he may have sustained and was cleared to return to his unit." [doc. #65-8, p. 1]. In his complaint, Plater alleges that he suffered profuse bleeding from the nose and injuries to his jawbone;

12

Thus, viewing the evidence in the light most favorable to Plater, the undersigned finds that Deputy Bourne applied force in a good-faith effort to restore discipline and not with any malicious or sadistic intent to cause harm.  Accordingly, he did not violate Plater's constitutional rights.

2. *Deputy Mitchell*

According to Deputy Mitchell's incident report, he employed force against Plater three times.  First, when Plater began resisting on his way out of the medical unit, Deputy Mitchell "grabbed [Plater] around his waist, while giving verbal commands to stop resisting, [and] secured him to the ground." *Id.*  During that process, "[Deputy Mitchell's] arm was positioned around [Plater's] head and neck area. He immediately removed his arm at that time. *Id.*  Then, once Plater was on the ground, he attempted to push off and stand up, at which time Deputy Mitchell "gave Plater two distractionary strikes to the facial area to gain compliance." *Id.*  Shortly thereafter, the ERT escorted Plater into a medical exam room and attempted to place him on a bed. *Id.*  Plater attempted to hit Deputy Mitchell in the face but missed.  Deputy Mitchell then used force a third time, placing two closed-fist strikes to Plater's face. *Id.*

Applying the *Hudson* factors, the undersigned finds that Deputy Mitchell's use of force was lawful.  As with Deputy Bourne, Deputy Mitchell's use of significant force was in response to Plater's own attempts to strike the officers, or his refusal to comply with the officers' verbal commands to cease resisting.  Like Deputy Bourne, Deputy Mitchell attempted to temper his use of force by removing his arm when it became positioned around Plater's head and neck area.  And,

---

"ribdomen;" abdomen; and lower back, as well as pain and suffering. [doc. #26, p. 4].  However, as previously discussed, unverified allegations in a complaint are not proper summary judgment evidence. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 334 (5th Cir. 2020) ("A court may not rely on mere factual allegations in an unverified complaint to make summary-judgment rulings.").  In any event, there is no evidence that Plater sustained serious injuries resulting from the officers' use of force.

13

while Deputy Mitchell struck Plater twice in the face, he did so while Plater was in the process of assaulting Deputy Mitchell and the other officers. Therefore, Deputy Mitchell's use of force was not excessive. *See Lara-Haynes v. Garcia*, No. 2:19-cv-056-Z-BR, 2021 WL 295841, at *7 (N.D. Tex. Jan. 6, 2021) ("The Court finds that three strikes with a closed fist, when the [handcuffed] Plaintiff was in the process of assaulting [the officer] by spitting on him and lunging towards him, is not excessive."); *Yarborough v. Loftis*, No. 6:14-CV-950, 2017 WL 9288033, at *6 (E.D. Tex. Oct. 18, 2017), *R&R adopted*, No. 6:14-CV-950, 2018 WL 387910 (E.D. Tex. Jan. 12, 2018) (finding that officer's use of force in striking an inmate multiple times, when inmate spit on officer and continued to move toward officer, was not excessive to the need.).

Thus, viewing the evidence in the light most favorable to Plater, the undersigned finds that Deputy Mitchell applied force in a good-faith effort to restore discipline and not with any malicious or sadistic intent to cause harm. Accordingly, he did not violate Plater's constitutional rights.

3. *Deputy Remedes*

According to Deputy Remedes' incident report, he employed force against Plater twice. First, after Plater attempted to strike an officer and continued to resist efforts to restrain him, Deputy Remedes tased Plater in his upper back and completed the circuit by touching off on his right hip. [doc. #65-8, p. 1]. Shortly thereafter, the ERT escorted Plater into a medical exam room and attempted to place him on a bed. *Id.* Plater then "stood up quickly and lunged his hands forward towards [Deputy Mitchell] in attempts to [punch him]." Deputy Remedes then "delivered a closed fist strike to [Plater's] upper torso in an attempt to gain compliance." *Id.*

Applying the *Hudson* factors, the undersigned finds that Deputy Remedes' use of force was lawful. As with Deputies Bourne and Mitchell, Deputy Remedes' Mitchell's use of significant force was in response to Plater's own attempts to strike the officers, or his refusal to comply with

14

the officers' verbal commands to cease resisting. Deputy Remedes tased Plater only after Plater attempted to strike an officer. He delivered a closed fist strike only after Plater lunged towards Deputy Mitchell and attempted to strike him. Therefore, Deputy Remedes' use of force was not unlawful.

Thus, viewing the evidence in the light most favorable to Plater, the undersigned finds that Deputy Remedes applied force in a good-faith effort to restore discipline and not with any malicious or sadistic intent to cause harm. Accordingly, he did not violate Plater's constitutional rights.

Having found that Plater did not meet his burden to show that Defendants' use of force violated his constitutional rights, the Court need not consider whether the right was clearly established at the time of the alleged misconduct. Accordingly, Defendants Bourne, Mitchell, and Remedes are entitled to qualified immunity, and their motion for summary judgment should be granted.

### B. Bystander/Failure to Intervene Liability

Plater asserts a failure to intervene claim against Sergeant Gaines. "An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under Section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The failure to protect an inmate from the use of excessive force by others also can be an Eighth Amendment violation that may give rise to liability. *Lara-Haynes*, 2021 WL 295841, at *8.

An officer may be liable under Section 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726

15

F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002) (internal quotation marks omitted)).

The Court has determined that there is no competent summary judgment evidence that the force used against Plater was excessive. Therefore, Sergeant Gaines had no reason to intervene. Accordingly, he is entitled to qualified immunity on Plater's bystander liability claim. *See Lara-Haynes*, 2021 WL 295841, at *8 (finding no bystander liability where there was no use of excessive force).

### C. Claims Against Unidentified Nurse

Upon initial review of Plater's complaint, the Court retained two of Plater's claims against an unidentified nurse: a state law negligence claim, and a Section 1983 deliberate indifference claim. [doc. #27, pp. 10–11, *R&R adopted*, doc. #57]. Pursuant to Federal Rules of Civil Procedure 4(m) and 41(b), the Court recommends dismissal of Plater's claims against "unknown nurse." Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Federal Rule of Civil Procedure 41(b) permits dismissal of claims "if the plaintiff fails to prosecute or to comply with these rules or a court order . . . ." The district court also has the inherent authority to dismiss an action *sua sponte*, without motion. *Allen v. City of Jeanerette*, No. 6:14-cv-2773, 2015 WL 9943588, at *1 (W.D. La. Sept. 25, 2015) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars

16

of the district courts." *Id.* (quoting *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (internal quotation marks omitted)). Local Rule 41.3 of this District provides, in part, "a civil action may be dismissed by . . . any judge of this court for lack of prosecution . . . where no service of process has been made within 90 days after filing of the complaint . . . ."

After myriad deficiencies, Plater filed his amended complaint on October 21, 2021. [doc. #5]. It remained under review in accordance with the provisions of Title 28, United States Code, Sections 1915 and 1915A, until November 30, 2021, when the Clerk of Court was directed to provide Plater with the necessary documents to effect service of process on the Defendants. In its November 30, 2021 Order, the Court stated that Plater should "try to uncover the identity of the unidentified nurse through discovery or through the records that served defendants must provide following this Order." [doc. #28]. Plater, however, never located and effected service on "unknown nurse" despite having had more than one year to do so. While Plater is proceeding pro se, that status does not exempt him from compliance with relevant rules of procedural and substantive law. *See Partain v. City of South Padre Island, Tex.*, 793 F. App'x 288, 292 (5th Cir. 2019) ("Although arguments by pro se litigants are liberally construed, pro se litigants must comply with the relevant rules of procedure.") (citing *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.")).

Accordingly, the Court recommends dismissal of Plater's claims against "unknown nurse" for failure to timely serve pursuant to Federal Rules of Civil Procedure 4(m) and failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b), as well as Local Rule 41.3. *See Thomas v. Gulotta*, No. 15-00435-JWD-RLB, 2018 WL 2750230, at *3 (M.D. La. June 7, 2018)

17

(dismissing plaintiff's claims against unknown defendants for failure to prosecute due to failure to effectuate timely service).

Although the dismissal of Plater's claims will be without prejudice, the Court recognizes that "[w]here further litigation of [a] claim will be time-barred, a dismissal without prejudice is no less severe a sanction than a dismissal with prejudice . . . ." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (quoting *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 556 (5th Cir. 1981) (internal quotation marks omitted)). "The statute of limitations for Section 1983 claims is 'the forum state's personal-injury limitations period,' which in Louisiana is one year." *Smith v. Regional Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)). Thus, because more than one year has elapsed since Plater knew of the alleged injury that is the basis of this action, he will be time barred from asserting a Section 1983 claim against "unknown nurse."[8] *See id.*

Dismissal with prejudice for failure to prosecute is appropriate only when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) lesser sanctions would not prompt diligent prosecution, or the record shows that lesser sanctions have proved to be futile. *Adams v. Monroe Transit Sys. 1st Transit*, No. 3:19-cv-281, 2020 WL 7040093, at *6 (W.D. La. Nov. 20, 2020) (citing *Berry*, 975 F.2d at 1191; *Callip v. Harris County Child Welfare Dept.*, 757 F.2d 1513, 1519-21 (5th Cir. 1985); *Boudwin v. Graystone Ins. Co.*, 756 F.2d 399, 401 (5th Cir. 1985); *Morris v. Ocean Sys.*, 730 F.2d 248, 252 (5th Cir. 1984)). "Additionally, in most cases

---

[8] Plater's state law negligence claims against "unknown nurse" will also be time barred under Louisiana's one-year preemptive period. *Smith*, 827 F.3d at 421 (applying Louisiana's one-year prescriptive period for personal injury actions); *Francis v. Health Care Capital, Inc.*, 933 F. Supp. 569, 573 (E.D. La. April 15, 1996) ("Louisiana has subjected all claims, whether based in tort, contract, or products liability, against health care providers to a one-year prescriptive period." (citing *Brooks v. Vitek*, 875 F.2d 499, 500 (5th Cir. 1989))).

where dismissal with prejudice is appropriate, one of the following aggravating factors is present: '(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.'" *Id.* (quoting *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986)).

Here, there is a clear record of delay. Plater has failed for more than 419 days to even attempt to locate and serve "unknown nurse." And, as Plater failed to oppose the instant motion for summary judgment, lesser sanctions are unlikely to prompt diligent prosecution. Further, there is an aggravating factor present because the delay is caused by Plater himself; because he is proceeding pro se, the delay cannot be attributed to an attorney. Thus, dismissal without prejudice, even though it will cause Plater's claims to be time-barred, is appropriate in this case.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the pending motion for summary judgment [doc. #65], filed by Defendants Anthony Gaines; Gavin Mitchell; Joseph Bourne; and Todd Remedes, be **GRANTED**, and all claims against them be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that Plater's claims against "unknown nurse" be **DISMISSED WITHOUT PREJUDICE** for failure to prosecute under Fed. R. Civ. P. 41(b) due to his failure to effectuate timely service pursuant to Fed. R. Civ. P. 4(m).[9]

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection

---

[9] This resolves all remaining claims against all remaining Defendants.

or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 24th day of January, 2023.

*[signature: Kayla Dye McClusky]*

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE